Sylvester BURTTON et al., Plaintiff-Appellants, Cross-Appellees,

v.

Donald A. JOHNSON et al., Defendants-Appellees, Cross-Appellants,

and

John T. Dunlop et al., Defendants-Appellees.

Nos. 75–2024, 75–2025.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1976.

Decided July 30, 1976.

William J. Scott, Atty. Gen., Herbert Caplan, Asst. Atty. Gen., Chicago, Ill., for Johnson.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., William Kanter, App. Section, Civ. Div., Dept. of Justice, Charles D. Raymond, Dept. of Labor, Washington, D. C., for Dunlop.

Sheldon Roodman, Kalman Resnick, Chicago, Ill., for Burtton.

Before CUMMINGS, SPRECHER, Circuit Judges, and STECKLER, District Judge.*

SPRECHER, Circuit Judge.

This appeal concerns the propriety of granting a preliminary injunction requiring the prompt payment of unemployment compensation to claimants in Illinois in a situation whereby a substantial percentage of payments are delayed.

I

Under Illinois law, Ill.Rev.Stat. ch. 48, § 420, unemployment compensation benefits do not begin to accrue until a claimant has been unemployed for a one-week waiting period. The second week of unemployment, then, is the first week of eligibility. Under optimum circumstances, the initial unemployment compensation payment is made within 14 days after this first week of eligibility. This means that under the best of circumstances, an unemployed individual will receive his first payment within 28 days of becoming unemployed. Continued payments are made on a bi-weekly basis, contingent upon receipt from the claimant of a form certifying that the claimant remains unemployed and that he continues to look for work.

The record below establishes, and the defendants do not deny, that Illinois claimants have experienced significant delays in receiving their initial unemployment compensation payments running anywhere from two to six months, and that such claimants have also experienced delays in receiving their continued payments. Since at least 1968, Illinois has experienced problems in making unemployment payments promptly. In the July to September quarter of 1968, the state made only 76.9% of its initial payments within the 14 days after the first week of eligibility. Thus, nearly one-quar-

---

* The Honorable William E. Steckler, Chief Judge of the Southern District of Indiana, is sitting by designation.

ter of the claimants during this period received their initial unemployment compensation payments more than four weeks after the claimant had become unemployed. The state's record improved slightly in 1969, but deteriorated during 1970 and 1971, reaching quarterly lows during those years of 64.7% and 59.5% respectively of initial payments being made within 14 days after the first compensable week. For 1972 and 1973, the rate of initial payments made within the 14 day period ranged around 74%. When unemployment increased in 1974 and 1975, the state's record again deteriorated to the point that in March of 1975, the state made only 47.5% of its initial payments within the 14 day limit. No similar data appears in the record regarding delays in the payment of continuing unemployment compensation benefits.

On the basis of this, and other evidence, the district court found that:

The State defendants have failed to provide such methods of administration as are reasonably calculated to ensure the full payment of unemployment compensation within four weeks of an application since at least 1969.

\* \* \* \* \* \*

During all of 1974 and 1975, there have been substantial backlogs in local unemployment compensation offices which have resulted in the failure to issue both initial and continuing unemployment compensation benefits when due. The State defendants' Chicago offices were 50% current and downstate offices 88% current at the time of the hearing. There is no reason to believe that the volume of unemployment compensation checks will decrease in the foreseeable future to alleviate the defendants' problems. On the contrary, recent legislation has extended the benefit period and thus increased the administrative load.

Not all of the excessive delays are attributable to the State defendants. Some of the delays were undoubtedly attributable to the fault of the claimants and other factors beyond said defendants' control, but a substantial portion of the delays were attributable to the defendants, at least during 1974 and 1975. None of the named plaintiffs received their unemployment benefits when due and thereby sustained irreparable damage.

\* \* \* \* \* \*

The State defendants . . . have the responsibility to ascertain claimant's earnings [and hence his eligibility for unemployment compensation benefits] by reviewing their records of contacting the employer. If an employer has erroneously reported or failed to report the earnings of a claimant, the State defendants will not accept the sworn statement of a claimant, W–2 forms, pay stubs, or other such evidence of earnings, but instead have established a policy requiring an investigation at the employer level, prior to the issuance of a revised finding and unemployment compensation benefits. This procedure often causes long delays and defendants will be required to justify or change it in the course of this litigation.

\* \* \* \* \* \*

Approximately 80% of all continued claims involve no contest and merely require [a] ministerial step . . . to trigger the mailing of unemployment compensation benefits. The Division of Unemployment Compensation has no maximum time requirements by which continued claim payments must be processed and mailed. After receiving their first unemployment compensation check, many eligible claimants have not been mailed their unemployment compensation benefits for successive weeks when due, notwithstanding their timely certification of their continuing eligibility.

\* \* \* \* \* \*

In recent months the State defendants have tried to alleviate the problems of excessive delays and backlogs by opening new offices, hiring additional staff, working the staff overtime, establishing a courier service, and utilizing task forces at major trouble spots. In addition, the

State defendants are in the process of redesigning the computer system for the entire unemployment compensation program. Other steps have also been taken, but as of June 19, 1975, the State defendants had not utilized their full authorization for the hiring of staff.

Defendants have represented that they are using all available methods to avoid the delays specified hereinabove and that some progress is being made. This does not yet appear from the record, however.

The district court denied the plaintiffs' relief except to the extent that it required the defendants to report back to the court in 35 days concerning what advances, if any, were made during the period. If no progress were made, the court threatened to hire at the defendants' expense a management consulting firm to suggest remedies.

## II

Section 303(a)(1) of the Social Security Act, 42 U.S.C. § 503(a)(1), requires that the Secretary of Labor make no certification for payment to any state unless he finds that such state has developed methods of administration for its unemployment compensation program which are "reasonably calculated to insure full payment of unemployment compensation *when due.*" (Emphasis added.) The Supreme Court in *California Department of Human Resources Development v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), held that this requirement applies to state programs not only when the Secretary of Labor certifies the programs, but that this requirement is also a general standard that state programs must meet. The Court also held that the requirement is an appropriate one for court enforcement. *Cf. Rosado v. Wyman,* 397 U.S. 397, 420–22, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (rejecting the argument that federal courts are without power to review state welfare programs because Congress lodged in the Department of HEW the power to cut off federal funds from non-complying programs).

The Court in *Java* made clear that the "payment when due" requirement has crucial significance to the administration of unemployment compensation. Chief Justice Burger for a unanimous Court held that the basic aim of the Unemployment Compensation Act is to make payments available "precisely on the nearest payday following the termination" as is administratively feasible. 402 U.S. at 130, 91 S.Ct. at 1353. The reasons Congress demanded this are manifold. The unemployed worker needs assistance to tide him over until he finds other work. He needs this assistance to avoid welfare or private charity, and he needs it so that he has the resources to find substantially equivalent employment without having to accept any job no matter how unsuited he may be for it. Unemployment compensation payments also ensure that even in times of great unemployment, purchasing power remains substantially undiminished, thus exerting a stabilizing influence on the economy. 402 U.S. at 131–32, 91 S.Ct. 1347.

In *Java* the Court faced a California provision which suspended payments of benefits to claimants when the employer appealed the initial decision sustaining the claimant's eligibility. The Court struck down this requirement as inconsistent with the "payment when due" requirement of 42 U.S.C. § 503(a)(1), section 303(a)(1) of the Act:

> We conclude that the word "due" in § 303(a)(1), when construed in light of the purposes of the Act, means the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions; any other construction would fail to meet the objective of early substitute compensation during unemployment. Paying compensation to an unemployed worker promptly after an initial determination of eligibility accomplishes the congressional purposes of avoiding resort to welfare and stabilizing consumer demands; delaying compensation until months have elapsed defeats these purposes. It seems clear therefore that the California proce-

dure, which suspends payments for a median period of seven weeks pending appeal, after an initial determination of eligibility has been made, is not "reasonably calculated to insure full payment of unemployment compensation when due." 402 U.S. at 133, 91 S.Ct. at 1355.

■ The Secretary of Labor has recently promulgated regulations which give substance to the "payment when due" requirement of 42 U.S.C. § 503(a)(1). Title 20 C.F.R. § 640.4, 41 Fed.Reg. 9559 (March 5, 1976), requires that states provide methods of administration which "will reasonably insure the full payment of employment compensation to eligible claimants with the greatest promptness that is administratively feasible." The Secretary in section 640.5 has provided criteria for compliance with this standard:

> A State will be deemed to comply . . . if . . . for each fiscal year . . .
>
> (a) It has issued 80 percent of first benefit payments on all intrastate claims within 14 days after the end of the first compensable week, and
>
> (b) It has issued 60 percent of first benefit payments on all interstate claims within 14 days after the end of the first compensable week.

The district court had interpreted the "payment when due" provision of § 503(a)(1) to require the state "to determine eligibility of claimants . . . for their initial unemployment compensation checks within not more than fourteen days from the end of the first compensable week." The subsequent issuance of these regulations overrides this interpretation and requires the *issuance* of benefit payments within the 14 day period.

### III

■ The figures on the percentage of initial benefit payments made by Illinois within 14 days after the first compensable week, although not broken down into intra and interstate categories, seem clearly to establish that the state is not meeting the criteria for compliance established by the

Secretary. The findings of fact also indicate that payments on continued claims are often substantially delayed and thus fail to meet the general standard of "greatest promptness administratively feasible" under the new regulations. See the letter accompanying the new regulations, 41 Fed. Reg. 9559, 9560 (March 5, 1976), making the general standard applicable to both initial and continued claim payments. Although it is clear from Illinois' payment record since 1968 that the plaintiff should be afforded some federal relief, both at the preliminary and at the permanent injunction stages, the present record and findings do not afford a sufficient basis upon which to generate relief. The record and findings do, however, provide sufficient basis for shifting the burden of justifying the massive payment delays to the state and federal defendants.

■ In regard to initial payment delays, one cause does surface from the record. During the hearing on the preliminary injunction, Agaliece Miller, Manager of Central Operations in the Division of Unemployment Compensation of the State of Illinois, testified that about 15 percent of the claims filed during the past period required an investigation of wage information before a claimant could be paid because the information did not exist or existed incorrectly in the division's records. Although employers are required to file regular reports containing wage information and applicability of the act to their employees, a significant number of employers do not file timely reports or, if filed, make reports containing incorrect information. The investigations to find the employer and verify the employment information are time-consuming and contribute significantly to the delays encountered in initial payment of benefits. The district court noted, as does this court, the fact that these delays might be at least partially avoided if the division would accept as an interim proof of eligibility payment stubs, W–2 forms or sworn statements of the claimants. The state has civil and criminal sanctions against claimants perpetrating fraud. On remand the

state should justify in detail why such a change should not be instituted.

This is only one of the causes of delay in making initial payments. Others are much less apparent from the record. Without the causes of delay outlined in detail, workable solutions cannot be found. It is the state's burden, since it has the information at hand, to detail the causes of delay both in the area of initial payments and in the area of payment of continuing claims. From this, proper findings can be made, and the appropriate relief granted.

As a final matter, it is appropriate to note the comments made by another court when facing a similar problem:

> The Court is not unmindful of the difficulties faced by defendants in meeting the requirement of reasonable promptness. However, staffing and funding problems are not sufficient to absolve the defendants of their failure to satisfy the mandatory provisions of the statute. When a state accepts federal money . . . , it does so with the realization that there are "strings attached."

*Cornelius v. Minter,* 395 F.Supp. 616, 621 (D.Mass.1974).

The district court should conduct an evidentiary hearing to permit the state and federal defendants either to attempt to justify the egregious delays in payments or to suffer the granting of some kind of preliminary or permanent relief to the plaintiffs beyond requiring the defendants to merely report to the court.

Vacated and remanded for further proceedings.